Good morning. Good morning. I'd like to preserve three minutes for rebuttal, please. All right. I'm Carol Zaste, Counsel for Appellants Douglas Woo, Arthur Moore, Benson Lynn, Juan Salcedo, and John Araki. These individuals are additional insureds under a Directors and Officers Policy purchased from Scottsdale Insurance Company, the respondent, by Westinghouse Digital LLC, their prior and former, who is now defunct. They sued to obtain the benefit of coverage that their now defunct employer purchased for their benefit. They seek coverage for a lawsuit alleging that they are liable for work that they did at Westinghouse Digital and for Westinghouse Digital. The insured's burden in this situation is to establish the existence of a potential for coverage. The burden then shifts to the insurer to establish the absence of any such potential. The underlying case in this matter is formidable. It spans 200 pages of factual allegations against 28 different defendants spanning multiple decades and literally circling the globe. This case is the quintessence of a mixed case. There are both covered claims and uncovered claims. Insureds posit that the covered claims are the allegations against them for liability for work that they performed for their employer, Westinghouse Digital, including responding to a subpoena issued to their employer in 2011 and 2012. The California Supreme Court in Horace Mann held that the courts look not to whether uncovered acts predominate in assessing coverage, but rather to whether there is any potential for liability under the policy. But counsel, isn't the issue here whether one of the three exclusions relied upon is controlling? Yes, Your Honor. The insureds posit that they've met the initial burden of establishing the existence of a potential for coverage. Right. So we don't need to examine that. The real question is whether the exclusion, let's say, for prior litigation can be affirmed, or whether the exclusion for prior knowledge or, for that matter, the fraudulent acts. Why doesn't at least one of those three exclusions absolve the insurance company from liability? Your Honor, each of those three exclusions fails for separate and independent reasons. The insurance company must establish that all of the allegations against the insureds fall within one of the three exclusions, and those three exclusions do not cover all of the allegations against the insureds, including allegations of responding to a subpoena in 2011 and 2012. I'll take first the exclusion for the fraudulent acts exclusion. In that exclusion, the timing precludes coverage. The exclusion requires a final judgment against, quote, such insured. The only final judgment at issue here is a 2010 judgment affirming an arbitration award on a breach of contract against Westinghouse Digital Electronics and Richard Hung, the former CEO, under an alter ego liability theory. Westinghouse Digital Electronics was the prior licensee of the Westinghouse trademark and trade name for consumer electronics. It effected an assignment for the benefit of creditors in April of 2010, whereby it assigned all of its assets and all of its liabilities to Credit Management Association, which then liquidated those assets, assigned some of the liabilities to satisfy creditors. Westinghouse Digital LLC, the named insured here, was the subsequent purchaser of some of those assets and the subsequent licensee of the Westinghouse trademark and trade name. Counsel, why doesn't the judgment against Hung, why isn't that judgment imputed to the other insureds? Your Honor, the judgment cannot impute to the other insureds under the severability clause of the policy. Where is that clause in the policy? Your Honor, that clause can be found on page 74 of the third volume of the excerpts of record. It's the last full sentence in the exclusions sections of the policy that the insurance company wrote. It provides that no wrongful act of one or more insureds shall be imputed to any other insureds for the purpose of determining the applicability of any of the above exclusions. But that's only for the wrongful act portion of the policy. Correct, Your Honor. The exclusion actually applies to all of the exclusions and wrongful acts is found within the language of the coverage policy, insurance policy, insuring clause 1, rather. In addition, the wrongful acts that were adjudicated, asked of Mr. Hung, are Mr. Hung's own adjudicated wrongful acts, not wrongful acts by any of the other insureds. Further, those wrongful acts occurred prior to the 2010 judgment. Is that same language found in the fraudulent acts provision? Your Honor, that language modifies every single one of the exclusions. If the court looks at page 104 of the excerpts of record, the court will see that it's a non-indented phrase at the end that modifies every single exclusion clause of the policy. Your Honor, speaking to the fraudulent acts exclusion, because there is a severability clause, the court examines the California Supreme Court decision of Minkler. There, the California Supreme Court answered a certified question from this court asking what California insurance law would apply in the event of a policy that includes a severability clause, as well as an intentional acts exclusion, which excludes intentional acts of, quote, an insured. In Minkler v. Safeco Company in 2010, the California Supreme Court responded to this court's question, identifying that applying the policy's coverage and its exclusions individually to each person protected by the policy, an exclusion of coverage for a specific kind of culpable conduct, applies only to the individual insured who committed it. In this case, that's Mr. Hung, who was adjudicated to have conducted wrongful acts in the 2010 arbitration. Those wrongful acts cannot be imputed under the language of the Scottsdale policy itself and the Minkler decision to exclude coverage for the individual insureds in this case who are alleged to have performed work for their new employer, Westinghouse Digital LLC. Counsel, could we look at the wrongful acts? Are you looking at page 101 of the excerpts of record, the definition of wrongful act? Your Honor, I have the definition of wrongful act before me, yes. What provision were you talking about? Your Honor. I looked on 74. I didn't see the language you're talking about. On page 74, Your Honor, it's the last sentence before subpart D. Is it page 74 of the excerpts of record? I'm sorry. It's page 104 of the excerpts of record? Aye. It's the last sentence of subpart C, and I'll read it. No wrongful act of one or more insureds shall be imputed to any other insureds for the purpose of determining the applicability of any of the above exclusions. So the wrongful acts of Mr. Hung cannot be used to preclude coverage for the insureds here. The difficulty I'm having with that argument is that under exclusions, 1B talks about wrongful acts, but then there's a separate provision, 1F, that talks about fraudulent acts. And so I'm curious as to why you think the language for wrongful act bleeds over into fraudulent acts when there's a specific provision for wrongful acts and one for fraudulent acts under the exclusion. Your Honor, the answer to that goes to the difference between this broad scope of the insuring clause and the narrow scope of the exclusion. The broad scope of the insuring clause provides that the insureds are entitled to coverage for any loss arising out of wrongful acts performed during the course and scope of their performance for work at Westinghouse Digital. The scope of the exclusion only covers wrongful acts performed by that specific insured based on the existence of the severability clause and the Minkler decision. So essentially you have an exclusion carving out a small subset of the larger duty to defend, which is the reason that the insureds contend that they have met their burden of establishing the existence of a duty to defend in this mixed case. Well, the duty to defend is different than the exclusion. The duty to defend is very broad. But then we look at each exclusion to see whether or not the particular coverage is excluded under the language of the policy. That's correct, Your Honor, and the issue here is whether or not Scottsdale was proper in denying any right of the duty to defend for any of these insureds. In order for the insurance company to take solace in the exclusions, the scope of the exclusion must subsume all of the allegations against the potential insureds. It's the insureds' positions that there are allegations in the underlying action, again, a 200-page complaint, that include both covered and uncovered claims. That's the reason why the insureds contend that there is an existence of coverage based on the California Supreme Court authorities of Montrose and Aerojet. The Court will look at whether or not there is any potential claim against any of the insureds that could potentially give rise to coverage under the policy. While the insurance company has focused on these exclusions, the insurance company has not identified how each of these exclusions covers every single possible allegation against these insureds in the underlying case. The insurance company has never identified how one of the three enumerated exclusions that is the topic of our briefs covers the allegations that the insureds are liable for responding to a subpoena issued to their employer in 2011 and 2012. A 2010 arbitration award cannot determine, cannot satisfy the language of the prior litigation exclusion or the fraudulent acts exclusion. Why can't it satisfy the prior litigation exclusion? Your Honor, the prior litigation exclusion requires a predicate fact. The policy defines claim as five separate procedural predicates, including arbitration. Scottsdale then crafted... But doesn't it also include demand letter? Yes, Your Honor. It does include a demand letter. It also identifies... And isn't that what happened here? Your Honor, respectfully, it's not what happened here. The demand letter at issue in the arbitration was a demand letter from Tatung to Westinghouse Digital Electronics for breach of contract. That was a demand to WDE, a separate entity, for separate acts. In addition, a demand letter, an arbitration demand, commences an arbitration much the way a complaint commences a complaint. A complaint initiates litigation. If the court looks at the definition of claim within the policy, that policy language identifies a claim as... ...a civil proceeding seeking monetary damages commenced by the service of a complaint or similar proceedings. Sending someone a draft complaint is not a demand letter. It's an initiation of a civil proceeding, which is subpart A of claim. Here we have an arbitration demand that is being described as a, quote, demand letter, as a backdoor to avoid the fact that the policy does not clearly on its face identify as an arbitration as a procedural predicate for the prior litigation exclusion. In addition, it does not... Counsel, on that point, I have one other concern, and that is whether we have jurisdiction at this stage. As I recall, the court ordered Westinghouse to get substitute counsel or the claims would be stricken. Westinghouse did not replace counsel, but the court failed to strike the claim. So don't we have a problem as to whether we have a final order here? Your Honor, I don't believe that we do have a problem. Under the Ninth Circuit decision of Anderson v. Allstate, this court encouraged a practical rather than technical construction of finality. There is no danger of piecemeal appeal confronting this court similar to the situation faced by the Anderson court. Westinghouse Digital has no employees, no officers, no counsel. In addition, the insurance company has conceded that the arguments made here on behalf of the individual additional insurance equally would apply to Westinghouse Digital. So there's no risk of appeals and the order dismissing Westinghouse Digital would simply have been a ministerial task, and jurisdiction exists under Anderson v. Allstate. That site is 630 F. 2nd, 677 at page 681, Your Honor. Another exclusion that Scottsdale has claimed applies that the insurance claims does not is the prior knowledge exclusion. This exclusion does not apply because, again, there are temporal concerns. The exclusion applies to facts known before the continuity date, but that continuity date was April 2010, the time of the assignment for the benefit of creditors. There could not be prior knowledge of acts that occurred in 2011, 2012, 2013, and 2014 as are alleged against the insurance in this case. Responding to a subpoena in 2011 cannot satisfy the prior knowledge exclusion under the policy. In addition, the assignment for the benefit of creditors blocks the imputed knowledge from Westinghouse Digital Electronics through the statutory assignment for the benefit of creditors to Credit Management Association, the Assinean Assignment for the Benefit of Creditors, through an asset purchase agreement to Westinghouse Digital and down to its insurance. Aren't those companies the same people? They're not, Your Honor. And it appears from the record and from the arbitration proceedings that Westinghouse Digital, WDE, was, I mean, they essentially found that they committed the fraudulent acts because they didn't have the money, Hung, or H-O-U-N-G, was then the person held liable, and then eventually in bankruptcy proceedings through an administrative proceeding there, the assignment of benefits for the creditors went into the Credit Management Association and then eventually back to Westinghouse named WD versus WDE. So I'm confused when you argue about the no prior knowledge, different companies, it appears to me that it was the same people that were running these companies. Your Honor, the confusion largely arises from the fact that both entities were licensees of the Westinghouse trademark and trade name, so logically the names are similar because they both paid money to use. There were individuals that worked at Westinghouse Digital Electronics that subsequently were hired at Westinghouse Digital LLC. That's not uncommon in an assignment for the benefit of creditors. Someone will come along and purchase assets from the assignee to be able to commence a business without taking on the liability of the assignor in the assignment for the benefit of creditors. Was Mr. Hung still involved with the business? Mr. Hung was involved with the business at Westinghouse Digital LLC, yes, Your Honor. However, the focus of this situation, Your Honor, is on the reasonable expectations of the additional insureds who suddenly, no longer working for Westinghouse Digital, ended up named in a RICO liability claim seeking $62 million for doing acts, including responding to a subpoena on behalf of Westinghouse Digital LLC. A reasonable person would look to their director's and officer's policy under that situation to provide solace for the allegations against them. Was some of the people family members of Mr. Hung? Your Honor, some of the 28 defendants that are identified in the underlying action are family members of Mr. Hung None of the appellants in this action are family members. They were simply employees. Well, not simply employees. I mean, Mr. Hung was CEO of WDE, and then he became CEO of WD, then Insurer Wu was the CFO and then became the vice president or was the vice president of WDE and became the CFO of WD. So they ended up becoming not just employees but officers of the next company that was created. Yes, Your Honor. The named insureds in this case are directors and officers of Westinghouse Digital LLC, the entity that purchased the assets from Credit Management Association after the ABC. While there are common employees, the ownership is different, the structure is different, et cetera. These were separate entities that placed separate policies. There are different systems for the directors and officers policy to protect these insureds from anyone who might come after them for doing their job. All right, counsel, you've exceeded your time. We'll give you a minute for rebuttal. Thank you, Your Honor. Good morning. May it please the court. My name is Valerie Rojas on behalf of Scottsdale Insurance Company. I have several reasons why Judge Carter's decision was correct, and I'll take the strongest reason in my opinion first, that being the prior demand letter and litigation. Counsel, may I ask, before you get into that question, would you mind responding to counsel with respect to the jurisdictional issue? Yes, Your Honor. In other words, do we have a final order affecting all of the participants in the district court? We do have a final order. I do not believe we have a final judgment. Although we submitted a final judgment for reasons unknown to me, it was never entered. Your Honor is correct that the judge did order Westinghouse Digital to obtain counsel and indicated it would be dismissing that plaintiff if it did not. Well, if the order did not apply to Westinghouse, then we have a problem, don't we? There's a missing party. Notwithstanding the fact I guess it's now defunct, but the point is that this could be cleared up very simply by letting it go back temporarily for the judge to go ahead and strike the Westinghouse claims. That would clear it up, would it not? It would, Your Honor, but I believe that this court has jurisdiction in the interest of judicial economy. Whatever is decided here is a judgment. I'm going to vote in on that and that the Anderson case does apply to allow this court to proceed. Very well. Getting back to the prior demand or litigation exclusion, that is the one exclusion that counsel has not argued the severability clause applies to. I do have a response to that, which I will get to later, but taking the prior demand or litigation exclusion first, this is a situation. This is a situation that started back in February of 2009 involving the exact same parties, that being Mr. Wong. Mr. Wong is a common party throughout all of these entities. He is the one in which the arbitrator and then the court found to be engaged in fraud, along with Mr. Wu and several others, including some of the insureds here. That is the common theme. What has happened is an ongoing effort for a breach of contract, the 2006 contract. This case is very similar to other cases that have already been decided. The first one would be Juskiewicz v. Federal Insurance Company. That's at 1988, Westlaw 476263, decided by the Northern District in California in 1988. The same prior pending litigation exclusion was evaluated in that case and the court found it because the arbitration or the underlying action was based upon an arbitration and the court found that that was an ongoing dispute and therefore the prior pending litigation exclusion applied. Similarly, the Court and Property ID Corp v. Greenwich Insurance, 377 Federal Appendix 648, 9th Circuit, 2010, also found that an ongoing dispute triggers the prior or pending litigation exclusion. Here we do not need to get into the argument that my opponent has addressed and that is whether arbitration is in fact litigation. We have here a prior demand letter that cannot be disputed. In February of 2009, a letter was addressed to Westinghouse Digital and Mr. Wong demanding $19 million and arbitration if he didn't pay it. That demand letter triggered an arbitration which then triggered a final judgment which then triggered proceedings in bankruptcy court in which the court found that the award could not be avoided because it was based on fraud. TATUN continued its efforts as the insureds allegedly played a shell game in an effort to avoid that arbitration award. That left us with this underlying action here. This underlying action is just yet one other attempt to collect for Mr. Wong and Westinghouse Digital electronics which then became Westinghouse Digital's breach of the 2006 contract. Because of that, the prior demand litigation has to apply to this situation. It doesn't matter that there are new parties or new claims. That was the exact argument addressed by the court in ML Direct. That's at 79 Cal App 4th, 137 California Court of Appeal in 2000. The court held that the phrase arising out of is not ambiguous but that it's very broad. And because it's very broad, it's immaterial that there are new claims, new parties in the underlying TATUN action. At the heart of the TATUN action is multiple references to TATUN's effort to collect for the 2006 breach of contract. Is that why we don't get into the severability clause? Is that your position? Our position is we would never, I would never concede that it's a severability clause, first and foremost. Why do you say that? Because the insureds rely upon a clause which is commonly called a severability clause and that's found in the Minkler decision in that clause by me, Your Honor. What page are you looking at for the severability clause? Is that what you're taking us to? No, I'm looking for the Minkler citation, for Your Honor. Oh. That's 49 Cal 4th at 415. The severability clause referred to in that policy states this insurance applies separately to each insured. So that's in the Minkler case you're talking about? That's in the Minkler case. That clause does not exist. It does not exist in this policy. In my view, the Minkler clause is a severability clause. What we have here is not a severability clause. It's a modification of exclusions which include the term wrongful act. As Your Honor pointed out earlier, the term wrongful act does not appear in the fraudulent acts exclusion, the prior pending demand or litigation, or the prior knowledge. It's immaterial to either, to any of the exclusions in this case because the words wrongful act do not appear in the exclusions. You cannot write in to a policy words that do not appear. Yet that is exactly what my opponent would like this court to do. That's the first reason Your Honor. I'd also like to add additional reason is that my opponent does not even argue that the severability clause applies to the prior demand letter or pending litigation exclusion. So we don't even have to deal with that issue to apply that exclusion. Their argument is simply that we have a quote unquote mixed action which I would disagree with as well. In my view, a mixed action in insurance law refers to a case in which there are both covered and uncovered claims. We do not concede this is a mixed action because no claims are covered. Not only are they excluded by the prior pending demand and litigation exclusion, they are excluded by two other exclusions. The first being the prior fraudulent, excuse me, the fraudulent act exclusion. That exclusion does not include the word wrongful act. It doesn't because wrongful act would imply coverage. There cannot be coverage for wrongful and dishonest acts. That exclusion makes it clear. So we don't have to deal with the severability clause for that exclusion as well. And that exclusion applies regardless of what insured. It doesn't matter that these particular insureds weren't held to engage in fraudulent acts. So what case do you rely upon to support your argument that it's sufficient if only one insured engaged in the excluded act? Your Honor, I would always rely first and foremost on the policy language, but I would also point, Your Honor, to National Bank of California versus Progressive Casualty Insurance Company, 938F 2D 919. 938S up. What was the balance? 2D 919. 919. Thank you. In that case, there was an arbitration award in which an insured was found to have engaged in fraud, and the court found that the arbitration award for fraud was sufficient to trigger the exclusion. For everyone? Because I asked you for your best case for that proposition. I would say, yes, Your Honor. Okay. And the fraudulent acts that we, I mean, there can be no dispute that there's a finding of fraud. Your Honor is correct. The opponent argues only that it shouldn't apply to them and goes into this argument regarding the reasonable expectations of the insured. However, I would point out that they have jumped the analysis. Before evaluating the reasonable expectations of the insured, the court must first find that the language is ambiguous. The language here is not ambiguous. They have, the insureds have pointed to no case in which the fraudulent acts or any of these exclusions, for that matter, have been found to be ambiguous. Yet they argue the reasonable expectations of the insured and that's completely inappropriate. What is appropriate is to look at the language of the policy and the face of the complaint. The complaint is long and lengthy, conceded, but the complaint is still based upon the 2009 demand letter. The 2009 demand letter asked for the money and then there was a continuing effort to avoid paying that $19 million. For that reason, the prior knowledge exclusion also applies. As the lower court pointed out, it would be unreasonable for Mr. Wong to claim that he had no knowledge that the underlying demand letter would eventually lead to another claim. He saw from Tatung's action that they were prepared to go after him not only personally, but in subsequent transactions, whatever company he created. It was his effort to avoid paying that that led to the creation of Westinghouse Digital, but that is immaterial that there are separate entities. The people and the actions are all the same. Counsel, could you point me to the language in National Bank that you rely upon to support your argument that an act by one of the  is against the other insurers? Could you point me to the precise language? I cannot, Your Honor. I do not have that in front of me. I apologize. But I can point out to Your Honor that the policy language refers to any fraudulent act of law. The term wrongful act does not appear in that exclusion. There are now three exclusions that the court can choose from in determining that Scottsdale does not owe a duty to defend because there is no potential for coverage. But I would like to address one other point that we have made and that we have reserved on appeal. Although the court below did not address it, it is still Scottsdale's position that the insurers have not met their initial burden of establishing coverage. In order to establish coverage, the insurers have to establish that the claim and the underlying action is for a wrongful act. Part of the definition of wrongful act includes acts committed solely in their capacity as a director of officer of the company. The insurer discusses actions that precede the existence of that company and also refer to the fact that those individuals have engaged in this conspiracy to personally benefit themselves. For those reasons, the insurer cannot meet the initial burden of establishing that this underlying action is even covered. So now we have four opportunities. There are both there's the wrongful acts definition which precludes coverage in the first instance. There's a prior or pending demand letter or litigation which excludes coverage entirely. There's the prior knowledge exclusion which also excludes coverage for all claims entirely. And then there is also the fraudulent acts exclusion which excludes coverage entirely. All of the exclusions are designed to address this type of situation in which insurers are engaged in an ongoing dispute before the policy even incepts. The fraudulent acts exclusion is designed to address this very situation in which an insurer has engaged in fraudulent activity. Not only do insurance companies not want to ensure fraudulent activity, it is also their responsibility to provide a duty to defend and if so to gain reimbursement for those expenses. For all of those reasons, Scottsdale was entitled to summary judgment and the court's decision granting it summary judgment was correct. If there are no other objections, the litigation award was an arbitration award against Westinghouse Digital Electronics and Richard Hung. Counsel indicated there was an adjudication as to Mr. Wu. That is incorrect. He was not a party to that litigation and his acts and actions were not adjudicated. In addition, looking to the prior knowledge exclusion, counsel referenced looking at what was in Mr. Hung's mind. Under the transport insurance case, which is a California court of appeal decision from 2014, I'll provide the site, 222 Cal App 4th, 1216. It is the intent of the named insureds who govern, not Mr. Hung. One looks at the intent of these individuals, the appellants in this action, to assess the scope of coverage. Finally, I would like to ask the court to consider Barnett, which is another California court of appeal decision. In Barnett, the court found in 2001, where a person is sued as an additional insured under a policy issued to a corporation, that person is entitled to a defense if he or she was acting in an insured capacity when they were engaged in a wrongful conduct. Here the insureds have been sued for alleged wrongful conduct in responding to a subpoena on behalf of their employer. Scottsdale takes the position that perhaps these individuals were responding to a subpoena on behalf of their employer for their own personal benefit. But the burden here lies with the insurance company to establish that the only reason these insureds responded to a subpoena to their employer was to their own personal benefit. All right,  understand your argument. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: O'scannlain, Rawlinson, Marquez